UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,               No. 14-cr-52 (ADM/LIB)

      Plaintiff,

v.                                                        **REPORT AND RECOMMENDATION**

Donald Scott Whitefeather,

      Defendant.

---

This matter came before the undersigned United States Magistrate Judge upon the parties' pretrial motions. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motion hearing on April 8, 2014, regarding the parties' pretrial discovery motions[1] and Defendant Donald Scott Whitefeather's Motion to Suppress Statements, [Docket No. 25]. For reasons discussed below, the Court recommends that Defendant's Motion to Suppress Statements, [Docket No. 25], be **DENIED**.

## I.     BACKGROUND AND STATEMENT OF FACTS[2]

### A.     Background

Defendant is charged with one count of assault with a dangerous weapon, in violation of 18 U.S.C. §§ 113(a)(3), 1151, and 1153, and one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6), 1151, and 1153. (Indictment [Docket No. 15]).

---

[1] The Court addressed the parties' discovery motions in a separate Order, [Docket No. 36].
[2] The facts are derived from the April 8, 2014, testimony of Red Lake Police Sergeant Alexandra Dow and former Red Lake Criminal Investigator Paul Kwako, and Government Exhibits 1-3.

**B.     Statement of Facts**

On the evening of December 31, 2013, Red Lake Police Sergeant Alexandra Dow ("Sgt. Dow") was on duty, pursuant to the Red Lake Police Department's "special tour" increased patrols policy for New Year's Eve, when she responded to an ambulance call heard over police dispatch regarding an alleged assault at a residence – specifically, an alleged "throat slash." Sgt. Dow was approximately one mile from the site of the alleged assault when she intercepted the call and arrived just ahead of the ambulance. Upon arriving at the residence, the homeowner directed Sgt. Dow into the home. Inside the residence, Sgt. Dow immediately observed two males; one was covered in blood and slumped against a wall and was, by all appearances, unconscious. Upon seeing Sgt. Dow enter the residence, the second male, later identified as the Defendant, immediately stated, "I did it, I slashed his throat," or words to that effect. Sgt. Dow did nothing to prompt Defendant – verbally or otherwise – to make these statements; she had just entered the residence and had not yet event had the opportunity to ask anyone any questions.

After first assisting the medical responders with the victim, Sgt. Dow handcuffed Defendant. Sgt. Dow observed a strong odor of alcohol on the Defendant and assessed him as intoxicated. As Sgt. Dow escorted Defendant to her marked patrol vehicle, the Defendant again stated, "I did it," and "Let him die," without any questioning by Sgt. Dow.

Sgt. Dow placed Defendant in her patrol vehicle and read Defendant a Miranda[3] warning. Sgt. Dow asked Defendant if he understood his rights; Defendant stated that he did. Up until and including this time, Sgt. Dow had not and did not ask Defendant any questions. Sgt. Dow returned to the residence, leaving Defendant restrained and secured in her patrol vehicle.

Inside the residence, Sgt. Dow met with Red Lake Criminal Investigator Paul Kwako (now a Leech Lake Criminal Investigator) and brought him up to speed on what she had

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

witnessed and learned at the scene.[4] Sgt. Dow left CI Kwako to process the scene, and Sgt. Dow transported Defendant to the Red Lake Detention Center. On the way to the Detention Center, Defendant continued to make comments such as, "Let him die" and "I'd do it again." At no point during the transport of Defendant to the Red Lake Detention Center did Sgt. Dow ask Defendant any questions.

Upon arriving at the Red Lake Detention Center, Defendant was booked into custody and, for the second time that night, given a Miranda warning. (Gov't Ex. 1). Although Defendant did not sign the Miranda Rights Warning and Waiver Form provided at the Red Lake Detention Center, Sgt. Dow testified that when asked if he understood his rights, Defendant nodded his head "yes." Sgt. Dow did not attempt to interrogate Defendant at this time.

The following day, on January 1, 2014, at approximately 3:00 p.m., CI Kwako arrived at the Red Lake Detention Center with FBI Special Agent Charles Bonser, to speak with Defendant. CI Kwako and SA Bonser introduced themselves to Defendant and stated the purpose of the interview. CI Kwako read Defendant a Miranda warning, reading enumerated rights from an Advice of Rights form and checking-off each right as Defendant indicated he understood it. (Gov't Ex. 2). Defendant acknowledged and said, "yes," he understood each right as CI Kwako read from the form. CI Kwako then asked Defendant if he wanted to waive the aforementioned rights and talk with CI Kwako and SA Bonser, to which Defendant replied that he did and signed the waiver of rights. (Id.)

CI Kwako testified that he observed no indication that Defendant did not understand his rights or the questions. CI Kwako testified that there was no evidence of drug or alcohol impairment, and that he had no doubt that Defendant was sober and aware.

---

[4] CI Kwako, also on-duty that night pursuant to the "special tour," had arrived at the scene approximately one half an hour after Sgt. Dow, after overhearing the dispatch call.

## II.     DEFENDANT'S MOTION TO SUPPRESS STATEMENTS, [DOCKET NO. 25]

Defendant moves the Court for an order suppressing any and all statements alleged to have been made by Defendant in connection with the above-captioned matter. The present record before the Court indicates that four sets of statements by Defendant are at issue: (1) statements made at the scene of the alleged assault immediately upon Sgt. Dow's arrival, (2) statements made at the scene of the alleged assault after Defendant had been handcuffed and restrained, prior to receiving a Miranda warning, (3) statements made in transit to the Red Lake Detention Center, after Defendant had received a Miranda warning, and (4) statements made during Defendant's custodial interrogation with CI Kwako and SA Bonser at the Red Lake Detention Center.

### A.     Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). However, law enforcement officers "are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him in custody." Id. (internal quotation omitted).

4

The Eighth Circuit considers six (6) factors when determining whether an individual is in custody:

> (1) Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012) (quoting United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)). "The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody." United States v. Axsom, 289 F.3d 496, 500-01 (8th Cir. 2002). Those factors, however, are not exclusive; "[t]he analysis depends upon a review of the totality of circumstances, and '[t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview.'" Sanchez, 676 F.3d at 630-31 (quoting United States v. Aldridge, 664 F.3d 705, 711 (8th Cir. 2011)).

The ultimate custody determination is based on the totality of the circumstances, with none of the above factors being dispositive, and a particularly strong showing on one factor may compensate for a deficiency on another factor. Griffin, 922 F.2d at 1347, 1349. The key inquiry is whether there was a formal arrest or restraining of a defendant's movement to the degree associated with a formal arrest. Stansbury, 511 U.S. at 322. "In answering this question, we look at the totality of circumstances while keeping in mind that the determination is based 'on the

objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004) (en banc) (quoting Stansbury, 511 U.S. at 322-23), cert. denied LeBrun v. United States, 543 U.S. 1145 (2005)). The Court must examine "both the presence and extent of physical and psychological restraints placed upon the person's liberty during the interrogation in light of whether a reasonable person in the suspect's position would have understood his situation to be one of custody." Axsom, 289 F.3d at 500 (internal quotation marks omitted).

A custodial interrogation is one that "involves questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. Interrogation is defined as "express questioning or its functional equivalent," which includes "words or action on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

A defendant's waiver of his Miranda rights must be made voluntarily, knowingly, and intelligently. Miranda, 384 U.S. at 444. When determining whether a waiver was made voluntarily, knowingly, and intelligently, the court must inquire whether:

> First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Second, the suspect must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

United States v. Vinton, 631 F.3d 476, 483 (8th Cir. 2011) (internal citations omitted) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

"The government has the burden of proving the validity of the Miranda waiver by a preponderance of the evidence." United States v. Haggard, 368 F.3d 1020, 1024 (8th Cir. 2004). The court "must examine both 'the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess.'" United States v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002) (quoting United States v. McClinton, 982 F.2d 278, 282 (8th Cir. 1992)). The United States Supreme Court has explained "that coercive police activity is a necessary predicate to . . . finding that a confession is not 'voluntary,'" Colorado v. Connelly, 479 U.S. 157, 167 (1986), and the Eighth Circuit has read that holding to mean "that police coercion is a necessary prerequisite to a determination that a waiver was involuntary and not as bearing on the separate question whether the waiver was knowing and intelligent." United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (emphasis in original) (quoting United States v. Bradshaw, 935 F.2d 295, 299 (D.C. Cir. 1991)).

In determining whether a waiver was voluntary, knowing, and intelligently made, a court "looks at the totality of the circumstances and must determine whether the individual's will was overborne." Syslo, 303 F.3d at 866.

"Whether or not Miranda is implicated, the Supreme Court has recognized that, in order for a confession to be admitted into evidence, it must be voluntary if it is to satisfy the Fifth Amendment's right against self-incrimination." United States v. Pankey, No. 07-cr-214, 2007 U.S. Dist. LEXIS 86785, at *11 (D. Minn. Oct. 25, 2007) (DWF/RLE) (Erickson, C.M.J.) (citing Dickerson v. United States, 530 U.S. 428, 433-34 (2000)), adopted by 2007 U.S. Dist. LEXIS 84319 (D. Minn. Nov. 13, 2007) (Frank, J.). When analyzing voluntariness, the Court considers "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." Dickerson, 530 U.S. at 434. Furthermore, a statement is involuntary if it "was

7

extracted by threats, violence, or . . . promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir. 2001) (quotations and citations omitted; ellipses in original). Whether a defendant's will has been overborne is determined by looking at the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure. United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998). Courts consider a multitude of factors including the age of the defendant, the level of education of the defendant, the lack of advice to the accused on his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973); see also United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005) (stating that "officers elicit confessions through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices. . . . None of these tactics render a confession involuntary, however, unless the overall impact of the interrogation cause the defendant's will to be overborne" (quotations and citation omitted).).

      **B.**    **Analysis**

      **1.**    **First Set of Statements – Statements Made Upon Sgt. Dow's Arrival at the Residence**

Nothing in the present record before the Court indicates that Defendant was in custody at the moment he made his initial statements upon Sgt. Dow's arrival at the scene. Even more significantly, nothing indicates that Defendant was subject to any interrogation by law enforcement.

As articulated above, Miranda attaches when an individual is subject to custodial, police interrogation. With regard to the initial statements Defendant uttered upon Sgt. Dow's arrival at the residence, nothing in the present record before the Court indicates that Defendant was questioned by law enforcement. To the contrary, Sgt. Dow testified that immediately upon seeing Sgt. Dow enter the residence, Defendant began spontaneously making statements. Nothing in the record before the Court indicates that Sgt. Dow made any comments or actions that were reasonably likely to elicit an incriminating response from Defendant. Innis, 446 U.S. at 301. Not only did Sgt. Dow testify that she did not ask Defendant any questions or otherwise prompt any statements, but the record indicates that she had no opportunity to do so.

Finally, in addition to the fact that Miranda does not apply to the first spontaneous statements uttered by Defendant, the fact that Defendant appeared intoxicated does not, by itself, render his statements involuntary. As the Eighth Circuit has previously explained, "alcohol use and drug use are relevant to our analysis, but 'intoxication and fatigue do not automatically render a confession involuntary.'" United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008) (quoting United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990) (internal edit omitted)); see also United States v. Turner, 157 F.3d 552, 555-56 (8th Cir. 1998) (refusing to adopt a per se rule for intoxication and finding that the defendant's confession was voluntary even though the defendant was intoxicated by PCP and later exhibited "bizarre" behavior and signs of mental illness). "[T]he test is whether these mental impairments caused the defendant's will to be overborne." Casal, 915 F.2d at 1229.

The Court finds that there is no evidence to suggest that Defendant was in anyway coerced into making the statements he uttered upon Sgt. Dow's initial arrival at the residence. Rather, the record is clear that Sgt. Dow did not ask Defendant any questions or in any way seek

to prompt Defendant to make any statements. Defendant's statements were entirety spontaneous utterances. Accordingly, on the present record, the Court cannot conclude that Defendant's first statements were involuntary, and thus the Court recommends denying Defendant's Motion to Suppress with respect to this first group of statements.

  **2.**  **Second Set of Statements – Statements Made After Sgt. Dow Handcuffed Defendant**

There is no question that Defendant was "in custody" for the purposes of <u>Miranda</u> once Sgt. Dow handcuffed him. Sgt. Dow had handcuffed Defendant and was in the process of leading Defendant to her patrol vehicle to be further secured. Sgt. Dow had not yet as of this time advised the Defendant of any <u>Miranda</u> rights.[5] As a result, the Court considers whether Defendant's second set of statements were the product of un-<u>Mirandized</u> police interrogation of the Defendant.

The record is devoid of any evidence suggesting that Defendant's statements were the product of custodial <u>interrogation</u>. The record before the Court reveals no evidence that Sgt. Dow – or any other law enforcement officer, for that matter – engaged in express questioning or its functional equivalent, which includes "words or action on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>Innis</u>, 446 U.S. at 301.

The record currently before the Court indicates that Defendant's statements were not prompted by any specific police conduct or questioning. Absent any evidence that Defendant was interrogated by officers regarding the alleged assault, nothing in the record indicates that

---

[5] "<u>Miranda</u> warnings are required only where a person's freedom has been so restricted as to render him 'in custody.'" <u>United States v. Martinez</u>, 462 F.3d 903, 908 (8th Cir. 2006). In <u>Martinez</u>, the Eighth Circuit held that, under a totality of the circumstances analysis, a defendant who had been handcuffed and advised that he was being further detained constituted "in custody" for the purposes of <u>Miranda</u>, as a reasonable person would not, considering the totality of the circumstances, feel he was at liberty to stop the questioning and leave. <u>Id.</u> at 909. "Martinez's freedom was restricted to a degree often associated with formal arrest, and we find he was in custody at the time he was handcuffed." <u>Id.</u>

Defendant's statements were anything but voluntary, spontaneous remarks. Id. at 300 (holding that a defendant's statements were not the product of custodial interrogation simply because officers were talking near the defendant while the defendant was in custody: "This is not to say, however, that all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation. As the Court in Miranda noted, 'Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. *The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . .* Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Miranda, 384 U.S. at 478 (emphasis added)"). See also United States v. Shannon, No. 06-cr-6 (JNE/JJG), 2006 WL 1579852, at *3 (D. Minn. Jun. 1, 2006) (holding that the defendant's statements, made while in custody, were spontaneous, unprovoked by officers, and therefore not requiring of suppression); United States v. Ochoa-Gonzalez, 598 F.3d 1033, 1039 (8th Cir. 2010) (holding that the defendant's voluntary statements during booking after being arrested were voluntary, not in response to interrogation, and thus admissible).

On the present record there is no evidence that law enforcement attempted to elicit incriminating statements from Defendant or coerce him in any way to make any comments while he was being escorted to Sgt. Dow's patrol vehicle. Accordingly, nothing in the record indicates that Defendant's custodial statements were anything but voluntary, independently made spontaneous remarks. As a result, Miranda is inapplicable and the Court recommends **DENYING** Defendant's Motion to Suppress with respect to this second set of statements.

### 3. Third Set of Statements – Statements Made In Transit to the Red Lake Detention Center

As indicated in the facts above, Sgt. Dow administered a <u>Miranda</u> warning upon securing Defendant in the back of her patrol vehicle and prior to transporting Defendant to the Red Lake Detention Center. There is no question that Defendant was in custody at this time. Defendant again made statements while en route to the Red Lake Detention Center. However, because Defendant was again not subject to any police <u>interrogation</u>, we need not consider whether Defendant voluntarily, knowingly, and intelligently waived his <u>Miranda</u> rights.

As already discussed above, nothing in the present record indicates that Sgt. Dow subjected Defendant to interrogation, whether by express questioning or its functional equivalent. For the same reasons articulated in the previous sections, absent any evidence that law enforcement attempted to elicit incriminating statements from Defendant or coerce him in any way to make such comments, nothing in the record indicates that Defendant's custodial statements were anything but voluntary, independently made spontaneous remarks. As a result, <u>Miranda</u> is inapplicable and the Court recommends **DENYING** Defendant's Motion to Suppress with respect to this third set of statements.

### 4. Fourth Set of Statements – Custodial Interrogation

At the motion hearing, Defendant conceded that CI Kwako properly Mirandized Defendant prior to conducting the January 1, 2014, custodial interview. Defendant made no arguments in support of suppression of the January 1, 2014, custodial statements. However, in an abundance of caution, the Court conducts a brief analysis of Defendant's waiver of his <u>Miranda</u> rights.

Again, there is no question that Defendant was "in custody" for the purposes of <u>Miranda</u> during the January 1, 2014, custodial interrogation. Similarly, this time, there is no question that

Defendant was subject to explicit interrogation by law enforcement. The Court must determine (1) whether Defendant voluntarily, knowingly, and intelligently waived his Miranda rights, and (2) whether Defendant's statements, a product of custodial interrogation at the Red Lake Detention Center, were made voluntarily.

As articulated in the facts above, on January 1, 2014, Defendant was given another Miranda warning and informed of his rights via an Advice of Rights form immediately prior to the commencement of his custodial interview. (Gov't Ex. 2). The record before the Court indicates that CI Kwako went over the form with Defendant, explaining each right and inquiring as to whether Defendant understood each right. Defendant indicated that he understood each right and voluntarily signed the form, agreeing to speak with law enforcement without an attorney present. Nothing in the present record indicates that Defendant displayed any signs of confusion or the inability to understand his rights. To the contrary, testimony indicates that Defendant voluntarily and knowingly agreed to speak with law enforcement.

Additionally, nothing in the present record indicates the involvement of police coercion, a "necessary predicate" to finding that a waiver or statement is not voluntarily given. Connelly, 479 U.S. at 167.

Based on the above facts, the totality of the circumstances indicates that Defendant, after being advised of his Miranda rights, did knowingly, voluntarily, and intelligently waive those rights.

Additionally, nothing in the present record indicates that Defendant's statements were anything short of voluntary. Nothing in the record indicates the involvement of any "coercive police activity" by the interviewing agents. The record indicates that no threats, promises, or

other deprivations or coercive techniques were engaged in by law enforcement during Defendant's interview on January 1, 2014.

The totality of the circumstances indicates that (1) Defendant did knowingly, voluntarily, and intelligently waive his Miranda rights, and (2) Defendant made his January 1, 2014, custodial statements entirely voluntarily. Thus, the Court recommends **DENYING** Defendant's Motion to Suppress Statements with respect to this fourth and final set of statements.\

### III. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Statements, [Docket No. 25], be **DENIED**.

Dated: April 21, 2014
s/ Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **within fourteen (14) days of the date of this Report and Recommendation, and no later than May 5, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **within fourteen (14) days of service thereof.** Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.